Merrill v. Welsher.

MERRILL v. WELSHER ET AL.

MERRILL v. FARIS.

1. **Taxation:** IN AID OF RAILROAD. A tax to aid in the construction of a railroad was voted in the township of K., to be expended in that and two other townships specified. Double the amount of the tax was expended by the company in constructing the road through K., but nothing was expended in either of the other townships: *Held*, that the three townships should be regarded as a unit, and that the tax was not forfeited by the failure to expend any part of it in either of the other townships specified.

2. ———: ———: SURVEY. The survey of the line of a road previous to the voting of a tax does not constitute a representation respecting the line of the road which is binding upon the company, or upon which the tax payer is authorized to rely.

3. ———: ———: SUSPENSION OF WORK. A suspension of work upon the road for three years and ten months was *held* not to work a forfeiture of the tax.

Merrill v. Welsher.

4. ———: ———: ESTOPPEL.  Nor would the company be estopped to
  collect the tax because it had advised, when the work temporarily
  ceased, that the collection of the tax should be suspended.

5. ———: ———: CERTIFICATE.  That the certificate of compliance by
  the company with the conditions of the tax was not executed in
  accordance with any order of the trustees, made at a meeting thereof,
  was *held* not to invalidate the tax, the certificate having been duly
  signed.

6. ———: ———: ASSIGNMENT.  A tax voted to aid in the construction
  of a railroad is assignable.

*Appeal from Marion District Court.*

MONDAY, DECEMBER 9.

THESE cases are submitted together as arising out of the
same state of facts and involving substantially the same ques-
tions of law.  The plaintiff holds by assignment a claim for
a tax voted in 1870 in Liberty and Knoxville townships, in
Marion county, to aid in the construction of the Albia, Knox-
ville & Des Moines Railroad.

In 1876 the board of supervisors, regarding the tax as for-
feited and subject to be abated, passed a resolution declaring
it abated, and directing the county treasurer not to collect it.
The first action was brought to obtain a writ of *certiorari*, to
test the jurisdiction and authority of the board to abate the
tax.  The second was brought to obtain a writ of *mandamus*
to compel the collection of the tax.

The tax voted in Liberty township was to be expended in
that township.  The tax voted in Knoxville township was to
be expended in Knoxville, Indiana and Pleasant Grove town-
ships.  Prior to August 1, 1871, the company expended in
Liberty township about two thousand dollars, and in Knox-
ville township about thirty-two thousand dollars.  Work was
then suspended until May 20, 1875, when it was resumed and
prosecuted to completion through Liberty township and to
the city of Knoxville, in Knoxville township.  Nothing was
done in Indiana township.  The original survey ran through

the township, but after the tax was voted a resurvey was made, and the township is left out of the line of the road as built. Pleasant Grove township is in the line of the road as projected, but it has not yet been reached. At the time the work was suspended the company advised that the collection of the tax should be suspended, and no further collections were made. A portion of the tax, however, had been paid. After it had remained in the treasury two years, without being earned by the company, actions were brought by the persons who had paid the tax to recover it, and judgments were rendered in their favor.

In completing the work subsequently through Liberty township, and to the city of Knoxville, in Knoxville township, the company expended in each township double the amount of tax voted. In August, 1875, the trustees of Liberty township certified that the tax voted in that township had been earned, and that the company had become entitled thereto. In November, 1875, the trustees of Knoxville township certified that the tax voted in that township had been earned, and that the company had become entitled thereto. The certificates were in due form, but no previous order or resolution of the trustees had been passed authorizing the issuance, nor does it appear that the certificates were signed at a meeting of the trustees. The certificates were presented to the county treasurer, R. M. Faris, defendant herein, who published the notices provided in such cases, to the effect that the tax had been duly certified by the trustees as earned by the company, and that the same was due. After the passage of the resolution of abatement the treasurer refused to proceed. Upon the foregoing facts the court rendered judgment for the defendants. The plaintiff appeals.

*T. J. Anderson, Stone & Ayres, Barcroft, Given & Drabelle* and *Wright, Gatch & Wright,* for appellant.

*J. D. Gamble* and *H. G. Curtis* for appellees.

Merrill v. Welsher.

ADAMS, J.—The first question presented is as to whether the fact that the company expended nothing in Indiana and

1. TAXATION: in aid of railroads.

Pleasant Grove townships should defeat the collection of the tax voted in Knoxville township. If it should, that would dispose of the Knoxville tax, unless the certificate of the township trustees is to be regarded as having the force of an adjudication to such extent that the defendants cannot be allowed to go behind it. The defendants' theory is that where a tax is voted to be expended in more than one township, as in this case, some part of it must be expended in every township or the whole will be forfeited. Strictly speaking, a tax cannot be expended until collected. If, then, the actual expenditure of it in a given place is a condition precedent to its collection, the provision for aiding a railroad by taxation would be nugatory. But the meaning of the statute, doubtless, is that the tax shall be first earned by the company by the expenditure of the requisite amount within the territory specified in the notice of election. The identical money received from the tax passes absolutely into the control of the company, and may be expended wherever the company sees fit.

In this way the provision of the notice is substantially, although not literally, complied with. But the defendants contend that even under this view the company never became entitled to demand the collection of the Knoxville tax. They say that it is not sufficient that double the amount of the Knoxville tax has been expended in Knoxville township; they say that the tax will not be collectible until something shall be expended by the company in each of the other townships. Pleasant Grove township has not yet been reached. Indiana township has been left out of the line of the road, and has been passed. The fact, however, that Indiana township has been left out and passed is of no greater significance, in the determination of the question before us, than the fact that Pleasant Grove township has not been reached. It is either necessary that there should be an expenditure in each one of

all three, or else it is sufficient that the requisite amount has been expended in one. It might at first seem sufficient to say that if the whole expenditure has been in Knoxville township, that should be sufficient to entitle the company to the Knoxville tax. But it appears that Indiana and Pleasant Grove townships voted a tax to be expended in the same three townships, and the defendants maintain that, if the Knoxville tax is collectible, the Indiana tax and Pleasant Grove are also, provided double the amount of tax voted in the three townships has been expended in Knoxville township. It is not easy to evade this conclusion.

The provision in the notice under which the tax was voted, that it should be expended in the three townships, must, we think, mean either that there should be some expenditure in each, or that the expenditure should· be within the territory of the three townships regarded as a unit. It is not to be denied, we think, that, looking as a mere grammarian at the words used in the notice, the former would be the more natural construction; but there are other considerations in favor of the latter, and in our opinion they are of controlling importance. According to the defendants' theory, if the company had expended one cent in Indiana township, and one cent in Pleasant Grove township, it would have satisfied the terms of the notice, and the objection would have been obviated upon which they rely.

The objection, then, is purely technical, and of the two constructions of which the language is susceptible we are asked to adopt the one which shall involve a holding that there was a design to provide for something of no appreciable importance. At this point we are met by an argument on the part of the defendants to the effect that while it is true that it would have been of no appreciable importance to the tax payers of Knoxville township, so far as the expenditure itself is concerned, if an infinitesimal amount had been expended in each of the other townships, instead of the whole being expended in Knoxville township, yet if some amount

was to be expended in each of the other townships, it would have necessitated the running of the road there. So the object of the provision in regard to expenditure, construed as meaning that some part, however small, should be made in each township, is not to secure the expenditure for its own importance, but merely to fix the line of the road. This view might appear to have some force, but for the fact that the statute requires that the notice shall expressly specify the line of the road. In complying with this provision it must be presumed that the words used defined the line of the road as specifically as was deemed expedient. In the notice in question the line of the road was specified as running from the city of Albia, in the county of Monroe, by the way of Knoxville, in the county of Marion, to the city of Des Moines, in the county of Polk.

If the trustees of Knoxville township had desired to provide that the road should run through Indiana and Pleasant Grove townships they should have inserted the provision among the words used expressly to specify the line of the road. This is especially so, as the statute requires the line of the road to be expressly specified. We are not allowed to add to the specification expressly so made in obedience to the statute by erecting some other provision into a specification which can have that effect only by indirection. As, then, a provision for some expenditure in each township would be useless for the direct purpose of the expenditure, and not proper for the indirect purpose of controlling the line, the words used in the notice must be held not to be a provision for some expenditure in each township, but for expenditure in the territory embraced in the townships regarded as a unit. The road was to run by the way of the city of Knoxville, in Knoxville township. Indiana township, it appears, lies on one side and Pleasant Grove on the other. The tax payers of Knoxville township must be understood as designing to limit the expenditure of their tax to the three townships, not for the purpose of fixing the line of the road, for it was to run by Knoxville, as

otherwise specified, but for the purpose of aiding in and securing the construction of that part of the road, rather than some part more remote. This, we think, is the fair meaning of the words used, construed with reference to the context, and the only object that could properly be designed to be accomplished.

But it is insisted by the defendants that at the time the tax was voted the road had been surveyed and the line located

2. ——: ——:  *survey.* through Indiana and Pleasant Grove townships; that the tax payers had a right to assume that it would be built as located; and, inasmuch as the tax was voted under a representation as expressed in the original survey, it should not now be collectible. It is said that we are not to inquire whether the tax payers have been prejudiced by the relocation; that this is a matter of strict right.

If the tax payers had wished to confine the building of the road to the line as surveyed, they should have expressly so provided. It was known to them that railroads are not always built on the line first surveyed. Improvements are sometimes made on the original survey. Changes are made which are called for by engineering considerations, which at first were overlooked or not properly estimated. Within the limits of the line as specified, we think the company had a right to assume that it was designed to give it the privilege of deviating from the original survey where the interests of the company seemed to require it. We think, then, that the collection of the Knoxville tax cannot be defeated by the fact that the road has not and will not be built through Indiana township as originally surveyed. We may, then, treat the tax the same as if it had been voted to be expended in Knoxville township, where the whole expenditure has, in fact, been made. The tax in Liberty township was voted to be expended there, and the expenditure has been made there. Whatever other objections are urged apply equally well to the tax in each township.

III. One objection urged is that there was a cessation of

work for three years and ten months. The defendants speak
3. ——: ——: of it as abandoned. As the work was resumed,
suspension of
work.          we must regard the cessation as having taken
place subject to the contingency of resumption. Whatever
doubts the company may have had, if any, about its ability to
resume, will not of themselves, we think, prevent the collection
of the tax. · The most, then, that can be said is that the work
ceased for. a time or was suspended. Is this a sufficient
defense? The statute does not provide that a railroad com-
pany, in order to entitle itself to a tax voted, shall be engaged
in the prosecution of its work every day, month or year. If
we should hold that it is necessary, we should add a dis-
tinct provision to the statute by judicial construction. There
is, it is true, a four-year limitation provided in regard to a
suspension of the collection of the tax, by reason of the non-
fulfillment by the company of a special condition or agree-
ment in writing, as provided by chapter 2 of the Laws of the
Fourteenth General Assembly. Such limitation is provided
in chapter 48 of the Private and Local Acts of 1874. Where
the company agrees in writing to do something as a condition
of receiving the tax, it is the duty of the township trustees
to certify the agreement in writing to the county treasurer,
and thereupon the collection of the taxes is to be suspended
until it shall be certified to the treasurer, by the trustees,
that the company has complied with all statutes and agree-
ments; and if the collection of the tax is thus suspended for
four years from the date of the levy, the tax may be deemed
forfeited, and the supervisors may declare it abated. The
supervisors declared the tax in this case abated, and they
claim that they were authorized to do so under the statutes
above referred to. When the tax was levied does not appear,
nor does it appear when the township trustees' certificates
were presented to the county treasurer, showing the comple-
tion of the work; but, assuming it to be more than four years
between date of the levy and the presentation of the trustees'

Merrill v. Welsher.

certificates to the county treasurer, we do not think that the collection of the tax can be defeated upon that ground.

The company entered into no special agreement in writing, the performance of which was a condition precedent to its right to receive the tax. The agreement relied upon is the provision in the published notice under which the tax was voted that it should be expended in the three townships. The defendants say that if the company claims the tax it became a party to this provision, and must be regarded as having agreed to expend the tax in accordance with it. It did not, as we have seen, make an expenditure in each one of the three townships, and it may be conceded that it did not make such expenditure anywhere within the three townships as to entitle it to receive the tax within four years from the date of the levy. But the company's failure was simply a failure to build the road. It was not a failure to perform a special agreement, for there was no special agreement. The designation in the notice of a place where the tax should be expended did not make a special agreement. Such designation is made properly every time a tax is voted, because the statute provides that it shall be. This, then, is an ordinary case. The tax was not collectible sooner simply because the company did not sooner do the requisite amount of work at the place where it was to be done to entitle it to the tax. The company may have a good excuse for not completing its road or doing a certain amount of work at a certain place within four years, and not have a good excuse for neglecting to perform its special agreements after the road is completed, or the requisite amount expended to entitle it to a given tax. We are of the opinion, then, that the action of the board of supervisors in abating the tax was without authority.

It is insisted by the defendants that the company should be held to be estopped by its own acts from enforcing the col-

4. ——: ——: lection of the tax. The company, it appears, estoppel. when the work was suspended, advised that the collection of the tax should be suspended. The defendants

say that they shall be greatly wronged by this advice, unless the company is now held to be estopped by it. The argument is that if the tax had been collected it would have become repayable to the tax payers at the end of two years, if not earned by the company. Some taxes, it appears, were collected, and repaid or recovered at the end of two years. So the defendants say that, but for the advice of the company, the other tax payers would probably have taken a course which would have resulted in a forfeiture of the whole tax by the company. But the tax payers did not make the company their adviser. There was no relation of trust or confidence. It was the right of every tax payer to tender his tax if he saw fit, and there being no special agreement on the part of the company to be performed, we think it would have been the duty of the treasurer to receive it, and if at the end of two years the company had not become entitled to it, it would have been repaid to the tax payer. In this way other tax payers besides those who paid might perhaps have gained by paying. But it is not for us to say that any tax not paid would have been forfeited if paid. The company, seeing the money in the treasury and a forfeiture imminent, might have done the amount of work requisite to save the forfeiture.

But it is said that the treasurer should not be compelled to act because the compliance by the company has not been duly certified to him by the township trustees. The alleged defect consists in the fact that the certificates were not executed in accordance with any order of the trustees made at a meeting thereof. Section 392 of the Code provides that the trustees shall cause a record to be kept of all their proceedings. If the execution of the certificate is a proceeding of the trustees within the meaning of the statute, it appears to us that there should have been some action thereon at a trustees' meeting. But the statute merely provides, in regard to the certificate, that it shall be signed by the trustees or a majority of them. This is a clear intimation that its force is to be considered as originating in the

5. ——: ——:
certificate.

signing.  It is not the mere evidence of a previous order or resolution.  Such are proved ordinarily by a certified copy, signed by the clerk.  We think the certificates sufficient.

Another position taken by the defendants is that as there has been a judgment of forfeiture in regard to certain taxes paid, it should be considered a judgment of forfeiture in regard to the taxes not paid.  But the judgment of forfeiture was based upon the fact that the taxes remained in the treasury two years without being earned by the company.  This ground of forfeiture does not exist in regard to those not paid.  Where taxes are actually paid into the treasury, so as to be available to the company immediately upon being earned, they become a source of strength to the company to enable it to earn them.  If the company fails to earn them, it seems to be eminently proper, as the Legislature has provided, that after a suitable time (which is two years, in the judgment of the Legislature) they should be refunded.  But those tax payers who, instead of paying, have had the use of their money, have not the same reason to complain of the company's delay.

It is finally insisted that the claim for the tax is not assignable.  But the right of transfer is distinctly recognized in chapter 48 of the Private and Local Acts of 1874.

6. ———: ———:
assignment.   In our opinion the plaintiff is entitled to judgment in both actions.  We think the resolution of the board of supervisors, declaring the tax abated, without authority and void.  We think the tax became delinquent upon the publication of the notices, and that the plaintiff is entitled to a peremptory order of *mandamus* against the defendant Faris, as prayed for in the petition.

REVERSED.

SEEVERS, J., having been of counsel, took no part in this decision.